J. Robert Smith, Esq. NV Bar No. 10992
jrsmith@hollandhart.com
HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, NV 89511
Telephone: (775) 327-3000
Facsimile : (775) 786-6179
*Attorneys for Defendant Ruby Pipeline, LLC*

# THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| ALICE M. GLADWILL, an individual,<br><br>Plaintiff,<br><br>v.<br><br>RUBY PIPELINE, LLC, a Delaware Limited Liability Company; DOES I through X; and ROE CORPORATIONS I through X,<br><br>Defendants. | CASE NO.: 3:11-cv-00251-RCJ-WGC<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

This matter came on for trial before this Court on September 18 and 19, 2012. The case was tried to the Court without a jury. Plaintiff Alice M. Gladwill was represented at trial by Robert Story of the STORY LAW GROUP. Defendant Ruby Pipeline, LLC was represented by J. Robert Smith of HOLLAND & HART, LLP. Having heard and carefully considered the evidence adduced by the parties, the arguments of counsel, and good cause appearing, the Court makes the following findings of fact and conclusions of law:

### I. FINDINGS OF FACT

1. Plaintiff Alice Gladwill ("Gladwill") is the owner of a cattle ranch in Northern Nevada.

2. Defendant Ruby Pipeline, L.L.C. ("Ruby") is the owner and operator of a newly

1

constructed interstate natural gas pipeline extending from Wyoming to Oregon (the "Pipeline").

3. On April 5, 2010, Ruby was issued a Certificate of Public Convenience and Necessity by the Federal Energy Regulatory Commission ("FERC") to construct a 680 mile natural gas pipeline and related facilities in Wyoming, Utah, Nevada, and Oregon ("Certificate").

4. As the holder of the Certificate, Ruby was expressly authorized by FERC to, among other things, construct and operate the Pipeline.

5. Prior to construction, Ruby sought out each of the landowners over whose property the Pipeline would cross in an effort to negotiate the purchase of temporary construction and permanent pipeline easements, as well as to pay for any related damages caused by the construction of the Pipeline.

6. One of the landowners with whom Ruby negotiated such easements was Gladwill.

7. On May 21, 2009, Ruby and Gladwill executed a Letter Agreement which identified the amount of money Ruby would pay Gladwill for the easements, as well as for damages and related items.

8. Pursuant to that Letter Agreement, Ruby agreed to pay Gladwill $22,226.00 for a temporary and permanent Right-of-Way easement across her property.

9. The Letter Agreement provided that "[a]fter construction of the project the disturbed right-of-way will be appropriately graded, contours re-established and reseeded."

10. On May 27, 2009, Gladwill also executed a Right-of-Way and Easement Agreement ("Right-of-Way Agreement"), granting Ruby a permanent easement across her property.

11. The Right-of-Way Agreement also required Ruby to:

> [T]ake all necessary measures to maintain proper drainage to prevent erosion of the surface of such easement premises, and

further at the completion thereof to re-contour and re-seed all disturbed areas with seed mixture recommended by Owner and/or appropriate agencies.

12. The Right-of-Way Agreement is unambiguous.

13. During construction, snowmelt and rainfall runoff caused water to flood parts of the Right-of-Way and erode some soil from the Right-of-Way onto Gladwill's property.

14. Ruby paid Gladwill $12,250.00 for damages related to soil eroding from the Right-of-Way onto her property.

15. Over the next several months, and while construction was still ongoing, Gladwill identified several issues with the construction, including the placement of a temporary 12 inch water line and the condition of a spring that she alleged Ruby damaged.

16. Ruby subsequently installed several crossings over the temporary water line to allow Gladwill's vehicles and cattle to more easily cross over the water line.

17. Ruby also retained AMEC Engineering to review the spring identified by Gladwill.

18. The geologist with AMEC conducted an inspection and noted that it was likely a seep rather than a spring, and that the ground-water discharge did not likely persist throughout the summer.

19. According to AMEC's geologist, the seep was likely fed by snowmelt on a gentle slope a short distance north of the spring.

20. Based on the recommendations from the geologist, as well as input from Gladwill, Ruby paid for the geologist to oversee the construction of a retention pond for the seep to collect water for Gladwill's cattle to drink.

21. On July 11, 2011, AMEC's geologist oversaw the installation of the retention pond.

22. Approximately one foot of water had accumulated in the pool by the morning of July 12, 2011.

23. Ruby did not perform any additional construction near the seep after July 12, 2011.

24.     After the seep was improved and the other conditions resolved, Gladwill identified several new issues that she wanted Ruby to take care of, including placing rip rap rock in the drainage ditches and replacing fences.

25.     Gladwill also requested that because soil had eroded from the Right-of-Way during construction that Ruby add more topsoil to a section of the Right-of-Way that she alleged was lower than the surrounding ground.

26.     Ruby agreed to Gladwill's request to bring in more topsoil.

27.     The parties then entered into a Surface Lease and Material Site Agreement with respect to the topsoil, which required Ruby to take and haul topsoil from one area of Gladwill's ranch to the Right-of-Way.

28.     Ruby paid Gladwill another $40,875.00 for the topsoil pursuant to the Surface Lease and Material Site Agreement.

29.     After the Pipeline was installed on Gladwill's property, the surface of the Right-of-Way was graded and the contours re-established.

30.     The evidence establishes that the re-contouring of the Right-of-Way was almost level.

31.     There is no proof that Ruby inappropriately contoured the Right-of-Way.

32.     Instead, the evidence establishes that Ruby properly graded and contoured the Right-of-Way on Gladwill's property.

33.     Ruby's work in grading and contouring the Right-of-Way on Gladwill's property was also required in the FERC approval documents.

34.     In addition, FERC makes routine inspections.

35.     FERC recently conducted an annual inspection on June 11-13, 2012 of the entire Pipeline route, which included a review of the Right-of-Way on Gladwill's property.

36.     On July 30, 2012, FERC prepared a report of its inspection, which included Gladwill's property.

37.     FERC did not find any issues or problems with the Right-of-Way on Gladwill's property, other than patchy revegetation indicative of the majority of the Pipeline route.

38. There is no evidence of any violation of FERC requirements.

39. There is no proof that Ruby varied from any FERC requirement.

40. As the project came to an end, Gladwill informed Ruby that she wanted to do the final re-seeding on the lower part of the Right-of-Way, place the rip rap rock and install the fencing. Ruby agreed to allow Gladwill to complete these tasks.

41. Ruby then purchased and provided the seeds and fencing material to Gladwill.

42. Ruby re-seeded the upper part of the Right-of-Way.

43. Despite being paid by Ruby to reseed the lower part of the Right-of-Way, Gladwill never reseeded the lower part of the Right-of-Way.

44. Gladwill also did not place the rip rap rock in the ditches as she was paid to do.

45. Vegetation along the Right-of-Way helps to protect against erosion.

46. Rip rap rock also helps protect against erosion.

47. Since the completion of construction, no soil has eroded from the Right-of-Way.

48. Since the completion of construction, the ditches constructed across the Right-of-Way by Ruby have not failed.

49. There is no evidence that Ruby did not comply with the Right-of-Way and Letter Agreements.

50. There is also no proof that Ruby inappropriately reseeded the Right-of-Way or inappropriately placed rock on the Right-of-Way.

51. There is also no proof that Gladwill suffered any damage related to the construction of the Right-of-Way since the completion of the Right-of-Way.

52. The spring that Gladwill alleges Ruby damaged is likely a seep rather than a spring.

53. Ruby improved the seep in July 2011 by constructing a retention pond.

54. Immediately after the improvement, water was observed in the retention pond.

55. Ruby did not perform any additional construction near the seep after it improved the seep and observed water in the retention pond it had constructed.

56. Ruby's expert testified that spring was a seasonal or semi-seasonal seep that

5

results from hardpan snowfall or precipitation above the seep.

57. The winter of 2011-2012 was unusually dry.

58. Gladwill presented no proof of any damage for the loss of the seep/spring.

59. The loss of the seep/spring also could have been prevented by Gladwill.

60. Gladwill was paid for the easement and an anticipated damage amount.

61. It would be anticipated that there would be damage to anything that stands directly in the way, including ledges or rock formations, of the Pipeline.

62. Gladwill also anticipated that there would be dynamite near the seep/spring, and that the rock formations in the location of the seep/spring would be subject to explosives.

63. In addition, Gladwill had notice on several occasions of where the Pipeline was going, including from the initial Pipeline route, the preparation of the Environmental Impact Statement, her son working on the Pipeline, and stakes in the ground.

64. Ruby did nothing in the area of the seep/spring other than what it was given permission to do.

65. Ruby did not cause any unanticipated damage, nor is Ruby responsible for the loss of the spring.

66. There is no evidence that Ruby damaged the seep/spring.

67. Ultimately, there is no proof of any breach of contract.

68. And there is no proof of any damages.

69. Mr. Gary Gladwill reconfigured the water flow on Gladwill's property for good and appropriate reasons.

70. Mr. Gladwill sent water across the newly existing Right-of-Way.

71. If Gladwill wants to protect or change the water flow, Mr. Gladwill is the one who has to do it.

72. Ruby has continuing obligation to maintain and repair the Right-of-Way.

73. If it appears there is a natural gully down the easement, Ruby has the obligation to maintain it.

74. Ruby, however, is not obligated to re-contour the Right-of-Way so that water

flows onto entire property outside of the Right-of-Way to the satisfaction of the landowner.

75. The easement agreement is quite clear as to what Ruby is required to do. And Ruby answered that call. Ruby paid for the dirt, and it appropriately re-contoured the Right-of Way.

## II. CONCLUSIONS OF LAW

On March 7, 2011, Gladwill filed suit against Ruby alleging Ruby breached the Letter Agreement and Right-of-Way Agreement. Gladwill also sought a preliminary and permanent injunction to prevent Ruby from: (1) placing a second, non-authorized water pipeline on the Pipeline Easements and/or from otherwise trespassing on her property; (2) allowing erosion of topsoil from the Right-of-Way; (3) allowing cattle to escape; and (4) using unauthorized, illegal, and/or unworkmanlike construction practices.[1]

With respect to her Breach of Contract Claim, Gladwill alleges that Ruby breached the parties' Agreements by failing to use appropriate and workmanlike techniques in the construction of the Right-of-Way, which has caused: (a) the Right-of-Way to become a conduit for rain and snow melt run-off causing erosion of topsoil which is essential to sustain the grazing land of Gladwill's cattle ranch; and (b) topsoil to bury land not part of the Right-of-Way, thereby depriving Gladwill of an ability to graze her cattle and make a living. In addition, although not alleged in her Complaint, Gladwill subsequently asserted that Ruby damaged a spring near the Right-of-Way, causing it to stop working.

Regarding Gladwill's claims for Preliminary and Permanent Injunctions, Gladwill asserts that soil eroding from the Right-of-Way is causing her harm and irreparable damage that should also be enjoined. Although not set forth in her Complaint, Gladwill subsequently asserted that Ruby failed to appropriately grade and re-establish contours of the Right-of-Way to the land's preconstruction status, and the Court should therefore mandate that Ruby restore the ranch to its preconstruction status by ordering Ruby to haul tens of thousands of yards of

---

[1] Because the temporary water line was removed prior to completion of construction and no cattle have escaped since completion of construction, Gladwill's request for injunctive relief related to these issues became moot prior to trial.

topsoil from one area of Gladwill's ranch to the Right-of-Way, and then pay her for the topsoil.

A.  **Gladwill's Breach of Contract Claim**

In order to prevail on a breach of contract claim, the plaintiff must establish (1) the existence of a valid contract imposing obligations and duties; (2) material breach by the defendant; and (3) damage as a result of the breach. *Saini v. Int'l Game Tech*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006) (citing *Richardson v. Jones*, 1 Nev. 405 (1865)). A valid contract exists between Gladwill and Ruby in the form of the Right-of-Way Agreement. Gladwill, however, has failed to establish that Ruby materially breached the Right-of-Way Agreement and has failed to establish she has suffered any damages.

1.  *Gladwill Has Failed To Prove Ruby Breached the Agreements By Not Properly Grading and Reestablishing the Contours of the Right-of-Way*

The Letter Agreement stated that "[a]fter construction of the project the disturbed right-of-way will be appropriately graded, contours re-established and reseeded." Similarly, the Right-of Way-Agreement required Ruby to "take all necessary measures to maintain proper drainage to prevent erosion of the surface of such easement premises, and further at the completion thereof to re-contour and re-seed all disturbed areas with seed mixture recommended by Owner and/or appropriate agencies."

Gladwill alleges that Ruby breached the parties' Agreements by failing to use appropriate and workmanlike techniques in the construction of the Right-of-Way, and in particular failed to appropriately grade and re-establish the contours of the Right-of-Way, which has caused: (a) the Right-of-Way to become a conduit for rain and snow melt run-off causing erosion of topsoil which is essential to sustain the grazing land of Gladwill's cattle ranch; and (b) topsoil to bury land not part of the Right-of-Way, thereby depriving Gladwill of an ability to graze her cattle and make a living. Ruby denies such allegations.

The evidence establishes that Ruby used appropriate and workmanlike techniques in the construction of the Right-of-Way. The evidence further establishes that Ruby properly graded and re-established the contours of the Right-of-Way. Gladwill has failed to meet her burden that Ruby materially breached the Agreements by failing to appropriately grade and reestablish

the contours of the Right-of-Way. Gladwill has also failed to present sufficient evidence that she was damaged as a result of Ruby's actions and/or inactions. Gladwill has thus failed to present sufficient evidence of liability, breach or damages. Accordingly, Ruby is entitled to judgment in its favor and against Gladwill on Gladwill's Breach of Contract claim that Ruby failed to grade and reestablish the contours along the Right-of-Way.

### 2. *Gladwill Has Failed To Prove Ruby Breached the Agreement By Not Properly Establishing Proper Erosion Techniques During Construction.*

Gladwill also alleges that Ruby did not employ proper erosion techniques during construction which caused some topsoil to erode from the Right-of-Way and be deposited onto her property. Ruby denies that it did not employ proper erosion techniques.

The evidence establishes that during construction, snowmelt and rainfall runoff caused some soil to erode from the Right-of-Way and be deposited onto Gladwill's property. With respect to such eroded soil, the evidence establishes that Ruby paid Gladwill $12,250 in damages in connection with that erosion. Ruby's payment of $12,250.00 for such damages, and Gladwill's acceptance thereof, constituted an account stated of the settled amount for that erosion. In addition, the evidence establishes that Ruby and Gladwill entered into a Surface Lease and Material Site Agreement which required Ruby to take and haul topsoil from one area of Gladwill's ranch to the Right-of-Way to replace the eroded topsoil. Ruby paid Gladwill another $40,875.00 for the topsoil pursuant to the Surface Lease and Material Site Agreement. Ruby's replacement of the eroded topsoil and subsequent grading and recontouring satisfied Ruby's obligation under the Right-of-Way Agreement with respect to the erosion that occurred during construction.

Since the completion of construction, Gladwill has failed to present sufficient evidence of erosion or damage that was caused by Ruby. As a result, there is insufficient evidence of liability, breach or damages with respect to erosion since the completion of construction. Ruby is therefore entitled to judgment in its favor and against Gladwill on Gladwill's Breach of Contract claim that Ruby failed to employ proper erosion techniques.

///

### 3. Gladwill Has Failed to Prove That Ruby Damaged The Spring/Seep.

Although not alleged in her Complaint, Gladwill subsequently asserted that Ruby damaged a spring near the Right-of-Way, causing it to stop working. Ruby denies it damaged the spring. Ruby asserts that the spring is really a seep that it is fed by snowmelt and rainfall, and that the reason it is not producing water is because of the unusually dry winter of 2011-12.

The evidence establishes that the water source allegedly damaged by Ruby is not a spring but rather a seep that results from hardpan snowfall or precipitation above the seep. In July of 2011, and at Gladwill's request, Ruby constructed a retention pond to collect water from the seep. On July 12, 2011, water was observed in the retention pond from the seep. Ruby did not perform any additional construction activities near the seep after July 12, 2011, thus demonstrating that the seep was working when Ruby completed construction. Gladwill has failed to present sufficient evidence that Ruby destroyed the seep. As a result, Gladwill cannot show that she has been damaged by the loss of the seep. Ruby is therefore entitled to judgment in its favor and against Gladwill on her claim that Ruby damaged the seep.

### B. Gladwill's Preliminary and Permanent Injunction Claims

A party seeking a permanent injunction must satisfy the following four factors before the district court may grant a permanent injunction: 1) The existence of irreparable injury (including a continuing and imminent threat of harm); 2) remedies at law are inadequate to compensate for that threat of harm; 3) whether the balance of hardships between plaintiff and defendant tips in favor of a remedy in equity; and 4) the public interest would not be disserved by a permanent injunction. *Bowler v. Home Depot USA Inc.*, 2011 U.S. Dist. LEXIS 4975 (N.D. Cal. 2011) (*citing Monsanto Co. v. Geertson Seed Farms*,130 S.Ct. 2743, 177 L. Ed. 2d 461 (2010), citing *eBay Inc. v. MercExchanges, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006)); See also *Chateau Vegas Wine, Inc. v. Southern Wine & Spirits of Am., Inc.*, 265 P.3d 680, 684 (Nev. 2011) ("Permanent injunctive relief may only be granted if there is no adequate remedy at law, a balancing of equities favors the moving party, and success on the merits is demonstrated.").

An injunction is an extraordinary remedy not to be lightly issued. *Hubbard Bus. Plaza v. Lincoln Liberty Life Ins. Co.*, 649 F. Supp 1310, 1317 (D. Nev. 1986). Where the purpose of the injunction is to require affirmative acts, or a mandatory injunction, the court should exercise restraint and caution when considering such a request. *See Leonard v. Stoebling*, 102 Nev. 543, 551 (1986). Mandatory injunctions, which disrupt the status quo, are particularly disfavored and subject to a greater degree of scrutiny. *LGS Architects, Inc. v. Concordia Homes of Nev.*, 434 F.3d 1150, 1158 (9th Cir. 2006); *overruled on other grounds, Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976 (9th Cir. 2011); *see also Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) ("A prohibitory injunction maintains the status quo whereas a mandatory injunction "goes well beyond simply maintaining the status quo pendente lite [and] is particularly disfavored."); *Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984) (Courts should be "extremely cautious" when asked to issue mandatory injunctions). "Thus, an award of mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or very serious damage will result." *Franck v. Yolo County*, 2012 U.S. Dist. LEXIS 113859, 5-6 (E.D. Cal. 2012) (citing *Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979)). "[I]n doubtful cases" a mandatory injunction will not issue. *Id.* Likewise, mandatory injunctions are not issued "where the injury complained of is capable of compensation in damages." *Kittitas Co. Fire Dist. #8 v. United States Forest Serv.*, 2011 U.S. Dist. LEXIS 146335, 11-12 (E.D. Wash. 2011) (citations omitted).

1. *Gladwill Failed To Establish Irreparable Injury*

"In order to prevail on the question of whether there exists an immediate threat of irreparable injury, a plaintiff must do more than raise the possibility of future harm. The plaintiff bears the burden of demonstrating that the threat of future harm is immediate — as opposed to the mere possibility of harm at some point in the future." *Bowler v. Home Depot USA Inc.*, 2011 U.S. Dist. LEXIS 4975, 8-9 (N.D. Cal. 2011) (*citing Caribbean Marine Services. Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988)). Thus, speculative and uncertain harm is not sufficient for an injunction. Injunctions are "to prevent existing or presently threatened injuries" and "will not be granted against something *merely feared* as

liable to occur at some indefinite time in the future." *Connecticut v. Massachusetts*, 282 U.S. 660 (1931) (*emphasis added*) (citing *New York v. Illinois*, 274 U.S. 488 (1927); *New Jersey v. Sargent*, 269 U.S. 328, 331, 338 (1926)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S.Ct. 365, 375-376 (2008) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."). Accordingly, a plaintiff's subjective fear that the injury might reoccur is not sufficient to demonstrate capability of repetition of an injury. *Preiser v. Newkirk*, 422 U.S. 395, 402-03, 95 S. Ct. 2330, 45 L. Ed. 2d 272 (1975).

Moreover, a showing of no more than "mere monetary harm" or even "financial hardship" does not demonstrate irreparable harm. *Elias v. Connett*, 908 F.2d 521, 526 (9th Cir. 1990). Likewise, "'[m]erely serious or substantial' harm is not irreparable harm." *Id. (citing Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005) (quoting *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001)). To satisfy the irreparable harm requirement, the movant "must show that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Walker v. Bay*, 2008 U.S. Dist. LEXIS 66662, *6 (D. Colo. Sept. 2, 2008) (*citing Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (*emphasis in original*) (*quoting Wis. Gas Co. v. FERC*, 244 U.S. App. D.C. 349, 758 F.2d 669, 674 (D.C. Cir. 1985)).

Gladwill has failed to present any evidence that there is any impending danger of irreparable harm that would support such an extraordinary remedy. Gladwill failed to identify how she is suffering imminent or irreparable harm. In fact, Gladwill has offered no evidence of such erosion since the completion of the Right-of-Way. Rather, Gladwill testified that she has a fear that erosion and substantial harm will occur at some indefinite time in the future. This fear of future harm is insufficient to establish a permanent or mandatory injunction. For this reason alone, Ruby is entitled to judgment in its favor and against Gladwill on her claim for a preliminary and permanent injunction.

///

### 2. *Adequate Remedy at Law Is Available*

Gladwill also cannot establish that an adequate remedy at law is unavailable. It is well established that injunctive relief is only available when a legal remedy is inadequate. *W. Land Exch. Project v. United States BLM*, 315 F. Supp. 2d 1068, 1098 (D. Nev. 2004) (declaring legal remedies are inadequate where no party is advancing any theory under which the plaintiffs could recover money damages). A legal remedy is inadequate when the plaintiff is "faced with immediate and irreparable injury for which he cannot be compensated with money damages." *Coffee Dan's, Inc. v. Coffee Don's Charcoal Broiler*, 305 F. Supp. 1210, 1216 (N.D. Cal. 1969). Thus, "[a] plaintiff is not entitled to an injunction if money damages would fairly compensate him for any wrong he may have suffered." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 595 (1952); *see also W. Land Exch. Project*, 315 F.Supp. at 1098; *Stanley v. University of S. Cal.*, 13 F.3d at 1320.

Here, Ruby has a continuing obligation to maintain and repair the Right-of-Way. If it appears there is a natural gully down the Right-of-Way which would result in damages to Gladwill, Ruby has the obligation to maintain it. In fact, the parties' Right-of-Way Agreement expressly provides for money damages if Mrs. Gladwill's pastures are damaged because of Ruby's conduct: "Company, by acceptance hereof, agrees to pay for damages to crops, pasture, and fences which may arise from laying, constructing, maintaining, operating, repairing, replacing or removing said pipeline." Thus, the parties have already agreed that an adequate remedy at law exists under the precise circumstances of this case.

Ultimately, Gladwill has failed to show that an immediate and irreparable injury exists, and that there is no adequate remedy at law. Instead, pursuant to the Right-of-Way Agreement and FERC requirements, Ruby has a continuing obligation to maintain and repair the Right-of-

///

///

///

13

Way. As a result, Ruby is entitled to judgment in its favor and against Gladwill on her claim for a preliminary and permanent injunction.

Dated this 10th day of January, 2013.

_____
JUDGE ROBERT C. JONES
United States District Court Judge

SUBMITTED BY:

**HOLLAND & HART, LLP**

_____
J. Robert Smith, Esq.
Nevada Bar No. 10992
5441 Kietzke Lane, Second Floor
Reno, NV 89511
(775) 327-3000

*Attorneys for Defendant Ruby Pipeline, LLC*

**Approved as to Form:**

**STORY LAW GROUP**

_____
Robert Story, NV Bar No. 1268
245 E. Liberty Street, Suite 530
Reno, NV 89501
(775) 284-5510
*Attorneys for Plaintiff*

5874375_1.DOCX